IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

**M30 BRANDS, LLC,**

    Plaintiff,

    v.

**RICELAND FOODS, INC.**

    Defendant.

CIV. NO. 18-1371 (PG)

## OPINION AND ORDER

Before the Court are plaintiff M30 Brands, LLC's ("M30") and defendant Riceland Foods, Inc.'s ("Riceland") cross motions for summary judgment. For the reasons below, M30's motion is **DENIED** and Riceland's **GRANTED IN PART**.

### I. BACKGROUND

M30 sues Riceland under The Puerto Rico Dealer's Act of 1964 ("Law 75"). See 10 L.P.R.A. § 278. Distributor M30 claims that supplier Riceland illegally terminated its distribution agreement with M30 in violation of 10 L.P.R.A. § 278a. Additionally, M30 alleges that Riceland impaired the distribution agreement in violation of 10 L.P.R.A. §§ 278a-1(b)(3) and 278a-1(b)(4).

### II. FINDINGS OF FACT

M30 is a Puerto Rico corporation that engaged in the distribution of rice at all times relevant to the case at hand. See Docket No. 61, Plaintiff's Statement of Uncontested Material Facts ("PSUMF") ¶ 1. Riceland is an Arkansas corporation that manufactures and exports rice. See Docket No. 58, Defendant's Statement of Uncontested Material Facts ("DSUMF") ¶ 1. In January of 2016, M30 and Riceland entered into a distribution agreement to sell branded rice product. See PSUMF ¶ 10. That agreement was limited to credit and payment terms. See id.; DSUMF ¶¶ 7, 8, 9. In January of 2018, Riceland unilaterally terminated its relationship with M30. See DSUMF ¶ 44.

M30 sold roughly 90% of its Riceland product in the Virgin Islands. See DSUMF ¶ 18. M30 sold $31,000 of rice in Puerto Rico in 2016 and $22,000 in 2017. See DSUMF ¶¶ 24, 25. M30 sold to two clients in Puerto Rico. See DSUMF ¶ 19. M30 did not market its Riceland products in Puerto Rico. See DSUMF ¶ 31.

Riceland sold unprocessed, unpackaged, unbranded rice in bulk to other business entities in Puerto Rico. See DSUMF ¶ 35; Docket No. 45-2. At least one of M30's orders to Riceland was delayed. See Docket No. 63, Plaintiff's Counter Statement of Uncontested Facts ("PCSUF") ¶ 9. Riceland sold rice to M30 at the same price at all relevant time periods. See DSUMF ¶ 37.

### III. STANDARD OF REVIEW

Through summary judgment, courts "pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required." Wynne v. Tufts Univ. Sch. of Med., 976 F.2d 791, 794 (1st Cir. 1992). The Supreme Court encourages employing summary judgment in federal courts - it "[avoids] full blown trials in unwinnable cases, … [conserves] parties' time and money, and [permits] the court to husband scarce judicial resources." McCarthy v. Northwest Airlines, Inc., 56 F.3d 313, 314 (1st Cir. 1995). See also Celotex Corp. v. Catrett, 477 U.S. 317 (1986).

A court may grant summary judgment only when the pleadings and the evidence demonstrate that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). See also Sands v. Ridefilm Corp., 212 F.3d 657, 660 (1st Cir. 2000). A factual dispute is "genuine" if it could be resolved in favor of either party, and "material" if it potentially affects the outcome of the case. See Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 19 (1st Cir. 2004). The court must review the record "taken as a whole," and "may not make credibility determinations or weigh the evidence." Reeves v. Anderson Plumbing Productions Inc., 530 U.S. 133, 135 (2000). Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are functions of a jury, not of a judge. See id.

In short, when there is a genuine dispute as to any material fact, and when a court would be required to make credibility determinations, weigh the evidence, or draw legitimate inferences from the facts in order to adjudicate a controversy, summary judgment will not be granted. While no legitimate inferences can be drawn, the court will construe all reasonable inferences in favor of the nonmoving party. See Stoutt v. Banco Popular de Puerto Rico, 158 F. Supp. 2d 167, 171 (D.P.R. 2001). Still, the nonmoving party is required to demonstrate "through submissions of evidentiary quality that a trial worthy issue persists." Iverson v. City of Boston, 452 F.3d 94, 108 (1st Cir. 2006).

## IV. DISCUSSION

Law 75 protects local dealers from unjust contract terminations. See Medina & Medina Inc. v. Hormel Foods Corp., 840 F.3d 26, 41 (1st Cir. 2016). At its core, the statute seeks to prevent suppliers from exploiting distributors who create a favorable market for the supplier's products by terminating the distribution relationship once the distributor has put in the money and legwork to successfully establish a brand in Puerto Rico. See id. Absent Law 75, suppliers could simply yank distribution rights away from a dealer once a favorable market had been developed and either directly sell their products in Puerto Rico or award distribution rights to a different dealer under more favorable terms. See id.

"Hence, Law 75 prohibits principals from engaging in conduct that, directly or indirectly, impairs—or is 'detrimental' to—the established relationship without just cause." Id. Supplier acts such as termination of the distributorship, contracting with additional distributors, or failure to fulfill merchandise orders may give rise to a claim under Law 75. See 10 L.P.R.A. § 278a-1.

A. *The Extraterritorial Application of Law 75*

Curiously, whether Law 75 applies to markets outside of Puerto Rico is not dispositive of this case, but nonetheless seems to be its pivotal consideration. After all, M30 made less than ten percent of its sales in Puerto Rico (the majority of product was sold to buyers in the Virgin Islands). The valuation of M30's alleged damages thus lives or *almost* dies by the answer to this question.

The short answer: it does not —product sold to buyers in the Virgin Islands by a Puerto Rico-based distributor does not fall under Law 75's purview.

M30 argues that Law 75 applies to its rice sales to the Virgin Islands because the sales were processed, originated and shipped from Puerto Rico. However, the Court finds that Law 75 is only triggered when a distributor *develops a market in Puerto Rico*. See 10 L.P.R.A. § 278 (narrowing the scope of a dealer's contract to one were merchandise is distributed or services rendered "on the market of Puerto Rico"); Alina & A Tours, Inc. v. Royal Caribbean Cruises, Ltd., No. CIV. 06-1009(JAG), 2006 WL 897975, at *1 (D.P.R. Mar. 31, 2006) ("the policy behind ... Law 75 is to protect dealers ... within the Puerto Rico market *and their protection does not extend beyond the island's geographical boundaries*" (emphasis added)). A sale's point of origin is thus inapposite. Cf. Medina & Medina, Inc. v. Hormel Foods Corp., No. CV 09-1098 (JAG), 2013 WL 12170571, at *15 (D.P.R. Sept. 30, 2013), aff'd in part, rev'd in part, 840 F.3d 26 (1st Cir. 2016) (finding irrelevant that "Hormel shipped the product to the Costco southeast distribution center in Atlanta"). Indeed, the rice that M30 sold to the Virgin Islands passed through a warehouse in Puerto Rico but cannot be said to have entered the Puerto Rico market for purposes of Law 75.

In support of its position, M30 cites a single holding that has never been directly followed, Beatty Caribbean, Inc. v. Viskase Sales Corp., 241 F. Supp. 2d 123 (D.P.R. 2003)[1], and that buckles under the weight of caselaw that points in the opposite direction. See Rosario Velez v. Palladio Beauty Grp., Inc., No. CV 11-1114 (JAG), 2012 WL 12995633, at *5 (D.P.R. Mar. 30, 2012) ("Law 75 does not apply outside of Puerto Rico and as a result, Plaintiff's claims are limited to the events circumscribed in our jurisdiction"); Alina & A Tours, Inc. v. Royal Caribbean Cruises, Ltd., No. CIV. 06-1009(JAG), 2006 WL 897975, at *1 (D.P.R. Mar. 31, 2006) ("the policy behind ... Law 75 is to protect dealers ... within the Puerto Rico market *and their protection does not extend beyond the*

---

[1] In Beatty Caribbean, the dormant commerce clause did not apply because the products in question were distributed outside the United States, to the Dominican Republic. See 241 F. Supp. 2d at 132. However, the same would likely not be true of products distributed from Puerto Rico to the United States. See 2 Franchise & Distribution Law & Practice § 10:5 "Constitutionality of State Relationship Laws—Burden on Commerce".

*island's geographical boundaries*" (emphasis added); <u>Goya de Puerto Rico, Inc. v. Rowland Coffee</u>, 206 F.Supp.2d 211, 214 n. 4 (D.P.R. 2002) (stating that Puerto Rico's laws cannot be interpreted to have an extraterritorial effect, and thus Law 75 could "only protect Goya as a dealer in Puerto Rico").[2]

Thus, in light of the above, the Court finds that Law 75 does not apply to M30's sales to the Virgin Islands.

*B.  Just Cause*

M30 claims that Riceland's termination of the distributorship runs afoul of Law 75. To be sure, in the absence of just cause, a supplier's termination or non-renewal of a distribution agreement violates Law 75. <u>See</u> 10 L.P.R.A. § 278a. Riceland, however, points to M30's poor performance in Puerto Rico and argues that it had just cause to terminate its distribution agreement with M30.

Per Law 75, just cause is the "[n]onperformance of any of the essential obligations of the dealer's contract, on the part of the dealer, or any action or omission on [their] part that adversely and substantially affects the interests of the principal or grantor in promoting the marketing or distribution of the merchandise or service." 10 L.P.R.A. § 278.

Some courts have held that poor or declining sales constitute just cause under Law 75. <u>See</u> <u>Casco Sales Co. v. Maruyama U.S., Inc.</u>, 901 F. Supp. 2d 311, 327 (D.P.R. 2012) ("to the extent that the levels of sales that Casco was generating were subpar, a finding of 'just cause' is warranted"). <u>See also</u> <u>Luis Rosario, Inc. v. Amana Refrigeration, Inc.</u>, 733 F.2d 172, 174 (1st Cir. 1984).

M30 sold $31,000 of rice in Puerto Rico in 2016 and $22,000 in 2017. Riceland has entered uncontroverted testimony into the record that "selling half a million dollars in rice is nothing."

---

[2] <u>See also</u> <u>Triangle Trading Co. v. Robroy Indus., Inc.</u>, 200 F.3d 1, 2 (1st Cir. 1999) ("Act 75 was enacted to ... [protect distributors who] had successfully *established a market in Puerto Rico* for the supplier's product or service.") (emphasis added); <u>R.W. Int'l Corp. v. Welch Food, Inc.</u>, 13 F.3d 478, 482 (1st Cir. 1994) ("The statute clearly incorporates within its reach any arrangement between a supplier and dealer in which the dealer is actually in the process of distributing the supplier's merchandise *in Puerto Rico*.") (emphasis added).

Docket No. 58 at 55. Thus, M30's sales would fall well below that benchmark.³ Still, some Courts have found poor sales performance to be a minor breach. See Richard M. Krumb, *Protectionism in Puerto Rico: The Impact of the Dealers' Contracts Law on Multinational Companies Planning Operations in Puerto Rico*, 25 Case W. Res. J. Int'l L. 79, 101 (1993). Nonetheless, this Court would need to don rose-tinted glasses before viewing such dismal sales numbers as only a minor breach.

Even more persuasive to the Court, however, is the fact that M30 undertook no efforts to promote, market or otherwise develop a favorable market for Riceland products in Puerto Rico. Not only is such a failure a violation that thoroughly harms Riceland's interests, but that also runs afoul to the core tenet of Law 75: that local distributors *who labor to develop a favorable market* on behalf of suppliers will be protected. See Trafon Grp., Inc. v. Butterball, LLC, 820 F.3d 490, 494 (1st Cir. 2016). M30's failure to market Riceland products and to develop the market is intrinsically tied to its poor sales performance, the latter seemingly a symptom of the former.

To be sure, nonperformance that affects "the interests of [a] principal … in an adverse or substantial manner in the development of the market" constitutes just cause. Newell Puerto Rico, Ltd. v. Rubbermaid Inc., 20 F.3d 15, 23 (1st Cir. 1994). The Court thus finds that M30's nonperformance in developing a market for Riceland products adversely affected Riceland's interests in a substantial manner.

Therefore, for the reasons stated above, the Court finds that Riceland had just cause to terminate M30's distributorship.

C. Impairment

§ 278a-1(b)(4): Price and Competition

M30 avers that Riceland impaired its ability to compete in the Puerto Rico rice market because the price at which Riceland sold rice product to M30 was too high and no discounts were

---

³ Law 75 does not require "that a supplier 'threaten' termination in order to validly terminate a distribution agreement." Casco Sales Co., 901 F. Supp. 2d at 323.

offered. Additionally, M30 avers that Riceland sold rice to competitors in Puerto Rico at more favorable prices. However, the Court finds that these claims hold no water.

First, the Court finds that Riceland sold rice to M30 at the same price at all relevant time periods and that those prices fell within the structure of the distributorship agreement. Second, the Court cannot find any legal basis that shows that M30 was entitled to a price lower than that which was agreed to, or to discounts. Indeed, Law 75, "only protects against detriments to contractually acquired rights." Vulcan Tools of Puerto Rico v. Makita U.S.A., Inc., 23 F.3d 564, 569 (1st Cir. 1994). To boot, that Riceland sold rice at lower prices to other business entities in Puerto Rico is inapposite because Riceland sold a different, easily distinguishable product to them. To be sure, Riceland sold unprocessed, unpackaged, unbranded rice in bulk to these other entities, which they in turn processed, packaged, branded and sold as private labels. Riceland, in turn, sold a specific brand of Riceland rice to M30 brands, per the distributorship agreement. Thus, the contractual relationship between Riceland and M30 was unaffected by Riceland's other rice sales. See Vulcan Tools of Puerto Rico, 23 F.3d at 569.

In any event, M30 has failed to sufficiently develop this argument. Repeatedly stating that Riceland "could have offered better prices and … refused" is not enough to carry the day.

As such, M30's first impairment claim necessarily fails.

§ 278a-1(b)(3): Delayed Shipments

Finally, M30 raises a second impairment claim on the basis that some Riceland shipments were delayed. While M30 has failed to develop their claim, Riceland has not demonstrated the absence of a genuine dispute of material fact as to this issue.

Riceland points to deposition testimony that shows that Puerto Rico clients did not terminate their relationship with M30 as a result of the late shipments. See Docket No. 58 at 60. However, Riceland has not demonstrated that M30 did not suffer any damages as a result of

lessened sales in the Puerto Rico market directly attributable to the delays.[4] Thus, M30's second impairment claim lives to see another day.

## V. CONCLUSION

For the reasons above, plaintiff's motion for summary judgment is **DENIED** and defendant's **GRANTED IN PART**. All M30's claims, except its 10 L.P.R.A. § 278a-1(b)(3) impairment claim, are **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED**.

In San Juan, Puerto Rico, October 13, 2020.

S/ JUAN M. PÉREZ-GIMÉNEZ
**JUAN M. PÉREZ-GIMÉNEZ**
**SENIOR U.S. DISTRICT JUDGE**

---

[4] M30 must demonstrate first that the length of the delay was unreasonable under Law 75. See 10 L.P.R.A. § 278a-1(b)(3).